MICHAEL LLOYD BEST AND DOLLY BEST v. VIVIAN ANN DODSON BEST

No. 8515DC1389

(Filed 17 June 1986)

1. **Parent and Child § 6.3— custody hearing—hearsay evidence—children's statements to grandmother**

   Defendant could not complain that the trial court in a custody hearing committed prejudicial error by admitting hearsay evidence, since defendant did not technically preserve an objection to the admission of the evidence; statements by a grandmother as to what the children in question had told her were in many cases the same as statements made by the children to a psychologist, and these statements were admissible as statements made to a psychologist for purposes of medical diagnosis or treatment; and the mere admission of incompetent hearsay evidence over proper objection does not require reversal, rather, defendant must show some prejudice, which she failed to do.

2. **Parent and Child § 6.3— modification of child custody—reliance on record generated in original hearing**

   In a hearing on a motion for modification of child custody, the trial court was not required to start with a "clean slate" but could in fact rely on the record generated in the original custody hearing.

3. **Parent and Child § 6.3— modification of child custody—changed circumstances**

   Evidence was sufficient to support the trial court's finding that changed circumstances justified a modification of child custody where the evidence tended to show that custody had previously been awarded to the mother; the attitude of the children toward their mother had changed; a psychologist who had examined the children testified that the children's behavior had "deteriorated" and become dramatically worse in the past few months and that the children were expressing distress over their situation with their mother; the mother allowed a boyfriend to live in her home; the psychologist testified that the deterioration in the children's behavior corresponded with the boyfriend's involvement with their mother; in light of a prior instance of sexual abuse by one of the mother's boyfriends and the court's express instruction that the mother not bring dates to the same residence with the children, the mother's admission necessarily was a substantial change of circumstance; the court found that the father had improved after finding him totally uninvolved at the time of the prior order; and the court found that the mother failed to understand the needs of the children.

APPEAL by defendant from *Peele, Judge.* Order entered 30 September 1985 in District Court, ORANGE County. Heard in the Court of Appeals 14 May 1986.

Defendant mother, Vivian Ann Best ("mother"), appeals from an order transferring custody of two minor children due to

changed circumstances. Prior to the order, custody was in mother, with visitation by the paternal grandmother, third party plaintiff Dolly Best ("grandmother"). No specific custody provision was in effect as to plaintiff father Michael Best ("father"). The order appealed from transferred custody to grandmother and awarded visitation rights to both mother and father.

Mother and father married in 1977. Two children were born of their marriage, Tabitha Best in 1978, and Wendy Best in 1979. The marriage deteriorated, however, and mother and father separated in May 1983 and later divorced. Father has remarried.

Father commenced this litigation in July 1983, filing a complaint seeking custody of the children. He alleged a general pattern of neglectful and irresponsible parental behavior by mother, as well as violent conduct on her part towards him which provoked him into regrettable acts. Mother counterclaimed for custody, divorce from bed and board, and support. She alleged *inter alia* that father had abandoned her and the children, had physically assaulted her and had committed adultery. Temporary custody was awarded to grandmother, who was made a party to the action.

Upon a hearing to determine permanent custody, the court in August 1984 entered an order and made findings as follows: Following the parents' separation, the children were shifted around in a chaotic manner until temporary custody was awarded to grandmother. Mother had difficulty adjusting to the court-ordered visitation schedule and in cooperating with counselors. At one point she left the children alone with a man, knowing that this was unsafe, and the man sexually abused them. Mother thereafter cooperated somewhat better with counselors, but remained generally uncooperative. Father simply played no real role in the children's life.

The court ordered permanent custody to mother, with visitation by grandmother. The court ordered the psychologist who had been counselling the children to prepare a report on the family situation. The court also gave mother specific "instructions," including: (1) she should not hinder or delay visitation, (2) she should not bring dates to her residence with the children, (3) she should not consume alcohol around the children, and (4) she should continue counselling. Neither side appealed.

In May 1985, grandmother filed a motion for modification of custody. Grandmother alleged that the children had told her that they were kept in a filthy place, that mother had a man ("Daryl") living and drinking with her and had other overnight male guests, and that mother threatened the children with beatings if they told anything to grandmother or their counselor.

A hearing followed in June 1985. Evidence was presented as follows: Grandmother testified and related what the children had told her about the housing conditions and mother's misconduct. The psychologist testified generally to the same effect. She stated that the demeanor of both children had changed, that both were anxious and depressed, and both were "expressing clear distress with their living situation" and a desire "to live elsewhere." The psychologist stated that this change in demeanor became noticeable at about the time that Daryl became regularly involved with mother. The psychologist had prepared the report ordered by the court in August 1984. The judge and all parties had received a copy. The contents of the report were not disclosed at this hearing and the report is not in the record. Father and his second wife testified, generally stating their increased maturity and sense of responsibility and a desire for increased involvement with the children. Mother testified and denied the alleged misconduct. She did admit that Daryl had moved in with her, but testified that he left after three weeks and now lived elsewhere though she continued to see him. Although plaintiffs suggested that the children speak to the judge, and mother stated she had no objection, the children did not testify nor were they examined by the judge.

By order of September 1985, the court made extensive findings of fact, and identified the following changes of circumstances: the children's change in attitude toward mother, their deterioration, father's improvement, the presence of Daryl in mother's home and mother's failure to understand the children's needs. The court ordered grandmother to assume custody with visitation by mother and father. Mother appeals.

*Cheshire & Parker, by D. Michael Parker, for defendant-appellant.*

*George P. Doyle for third-party plaintiff-appellee Dolly Best.*

*No brief for plaintiff Michael Lloyd Best.*

---

Best v. Best

---

EAGLES, Judge.

This appeal presents two questions: (1) Did the court commit prejudicial error by admitting hearsay evidence? and (2) Did the court err by finding that changed circumstances justified a modification in custody? We answer both questions "No" and accordingly affirm.

I

[1]   As noted earlier, both grandmother and the psychologist testified about statements made to them by the children. Mother contends that she is entitled to have the order vacated, since this hearsay evidence was improperly admitted and without it grandmother failed to show any change of circumstances.

We begin by considering whether this argument is properly presented to this Court. Review in the Court of Appeals is limited to those exceptions set out in the record on appeal immediately following the record of the judicial action addressed by the exception. App. R. 10(a); App. R. 10(b)(1). Failure to object to the admission of evidence generally results in no judicial action and hence nothing upon which to base an exception. *See for example State v. Wilson,* 237 N.C. 746, 75 S.E. 2d 924 (1953); *State v. Smith,* 50 N.C. App. 188, 272 S.E. 2d 621 (1980). General, or broadside, exceptions or assignments of error have always been considered ineffectual on appeal. *See Hines v. Frink,* 257 N.C. 723, 127 S.E. 2d 509 (1962). The transcript submitted as the record of the taking of evidence in this case contains few objections and no exceptions, and mother argues a single general assignment of error on this subject. Technically, the court's admission of the hearsay evidence is not before us.

Mother relies on her exception to the following finding:

When the Grandmother was asked about what the children had said to her, Mr. Parker [counsel for mother] objected to this as hearsay. The Court overruled the objection and announced that it would hear what people alleged they heard the children say. Therefore, a large amount of evidence at this hearing was hearsay.

In interpreting findings of fact such as this one, we construe them in favor of the validity of the judgment. *See Bradham v. Robin-*

*son,* 236 N.C. 589, 73 S.E. 2d 555 (1952) (admitting that more specific findings preferable, but affirming judgment); *Phelps v. McCotter,* 252 N.C. 66, 112 S.E. 2d 736 (1960) (general presumption of regularity).

The fact that evidence is hearsay does not automatically render it inadmissible or incompetent. Numerous exceptions to the hearsay rule are recognized; the theory underlying the exceptions is generally that although the statements *are hearsay,* they possess sufficient circumstantial guarantees of trustworthiness to be admissible even though the declarant may be available to testify. *See* G.S. 8C-1, R. Ev. 803, Commentary. We therefore do not interpret the court's finding to necessarily mean that the hearsay evidence it heard was *incompetent,* merely that it was hearsay. Accordingly it appears that mother has not technically preserved an objection to the admission of the evidence.

Even assuming that mother had properly preserved objections on hearsay grounds to all statements by the children, it appears that at least some of the statements would have been admissible as statements made to a psychologist for purposes of medical diagnosis or treatment. G.S. 8C-1, R. Ev. 803(4). We reached this same result in *In re Helms,* 77 N.C. App. 617, 335 S.E. 2d 917 (1985), holding that statements to a treating psychologist by a child victim of sexual abuse were admissible even though the child did not testify. *See also State v. Spangler,* 314 N.C. 374, 333 S.E. 2d 722 (1985) (statements to psychiatrist admissible); *see under identical federal rule United States v. Iron Shell,* 633 F. 2d 77 (8th Cir. 1980) (admitting hearsay testimony as to narrative statements of non-testifying child victim), *cert. denied,* 450 U.S. 1001, 68 L.Ed. 2d 203, 101 S.Ct. 1709 (1981). The psychologist testified without any objection to many of the same statements that grandmother did, and therefore they could be properly admitted. Mother does not address the psychologist's testimony in any way in her brief and has failed to properly except to its admission. *See* App. R. 28(b)(5); *State v. Davis,* 68 N.C. App. 238, 314 S.E. 2d 828 (1984) (questions not argued abandoned).

Finally, the mere admission of incompetent hearsay evidence over proper objection does not require reversal. Rather, the appellant must also show that the incompetent evidence caused some prejudice. Where the court sits as finder of fact, the ap-

pellant must show that the court relied on the incompetent evidence in making its findings. *Wood-Hopkins Contracting Co. v. N.C. State Ports Authority*, 284 N.C. 732, 202 S.E. 2d 473 (1974). Where there is competent evidence in the record supporting the court's findings, we presume that the court relied upon it and disregarded the incompetent evidence. *In re Annexation Ordinance*, 66 N.C. App. 472, 311 S.E. 2d 898, *disc. rev. denied*, 310 N.C. 744, 315 S.E. 2d 701 (1984). For reasons discussed *infra* in our consideration of the sufficiency of the evidence, and for the reasons discussed above, we conclude that under these standards of review mother has failed to demonstrate prejudicial error.

## II

Mother contends that as the natural parent she is presumptively entitled to custody absent convincing proof that the best interests of the children require a different arrangement. *See In re Cusson*, 43 N.C. App. 333, 258 S.E. 2d 858 (1979). The presumption in favor of the natural parent(s) is rebuttable, however. *Wilson v. Williams*, 42 N.C. App. 348, 256 S.E. 2d 516 (1979). The primary concern of the trial court in awarding custody is not the rights of the parent(s), but the best interest of the child. *In re Gwaltney*, 68 N.C. App. 686, 315 S.E. 2d 750 (1984). We note that it is not necessary for the natural parent to be found unfit for the presumption to be overcome. *Comer v. Comer*, 61 N.C. App. 324, 300 S.E. 2d 457 (1983).

[2] In its August 1984 order, the court made specific findings that mother knowingly allowed an unfit man access to the children, resulting in sexual abuse, and that mother took no corrective action. The court also found that mother had failed to cooperate with its directives, causing the children confusion and stress, and had not testified forthrightly about her relationship with another man or her consumption of alcohol. While the court ordered custody to the mother in August 1984, it did so recognizing that "grandmother should probably have custody for awhile." In the interest of avoiding further litigation, however, the court awarded custody to mother. It did so with the "instructions" noted above. Under the circumstances, it is clear that the original presumption in favor of mother had been substantially diminished by the findings and conditions of the August 1984 order. We are aware of no authority that each successive custody hearing starts

Best v. Best

with a "clean slate" and that the court cannot rely on the record previously generated. To the contrary, custody proceedings generally are continuing in nature, *see Brandon v. Brandon*, 10 N.C. App. 457, 179 S.E. 2d 177 (1971); and the court expressly referred to its prior orders in the order appealed from here.

### III

[3] Mother contends that the trial court erred in finding that changed circumstances justified a modification of custody in this case.

The trial court has wide discretion to fashion particular relief in what are often difficult child custody matters. *Pruneau v. Sanders*, 25 N.C. App. 510, 214 S.E. 2d 288, *cert. denied*, 287 N.C. 664, 216 S.E. 2d 911 (1975). Since the trial judge sees and hears the live witnesses and observes their demeanor, his or her exercise of discretion should not be upset absent a showing of clear abuse. *Glesner v. Dembrosky*, 73 N.C. App. 594, 327 S.E. 2d 60 (1985); *King v. Demo*, 40 N.C. App. 661, 253 S.E. 2d 616 (1979).

Modification of a custody decree in the discretion of the court must be supported by findings of fact that there has been a substantial change in circumstances affecting the welfare of the children. *Rothman v. Rothman*, 6 N.C. App. 401, 170 S.E. 2d 140 (1969). The court's findings are conclusive if supported by competent evidence even if there is evidence *contra* or incompetent evidence in the record. *See In re McCraw Children*, 3 N.C. App. 390, 165 S.E. 2d 1 (1969). As noted above, it is presumed that the court disregarded the incompetent evidence and relied on competent evidence. We consider the findings of changed circumstances in light of these standards.

The court found that the attitude of the children toward their mother had changed. The psychologist testified that the children's behavior had "deteriorated" and "became dramatically worse" in the past few months, and that the children were "expressing distress" over their situation with their mother. Previously the children had acted happy to be living with their mother when they came to see the psychologist. Mother did not object to the psychologist's testimony and it would probably have been admissible anyway. G.S. 8C-1, R. Ev. 803(4). The psychologist's opinion as to the general condition of the children would also appear

properly admissible. R. Ev. 703. This evidence supported the finding, regardless of hearsay statements testified to by grandmother.

The court found that mother allowed Daryl to live in her home. She admitted this on the stand, although she testified that Daryl moved out several weeks later. Mother continues to see Daryl. The psychologist testified that the deterioration in the children's behavior corresponded with Daryl's involvement with their mother. In light of the prior instance of sexual abuse by one of mother's boyfriends and the court's express instruction that she not "bring dates to the same residence with the children," mother's admission necessarily was a substantial change of circumstance and a cause of grave concern to the court. By comparison, in *Blackley v. Blackley*, 285 N.C. 358, 204 S.E. 2d 678 (1974), where unfitness was not demonstrated by overnight stays of a boyfriend, there had been no prior history of abuse and the boyfriend subsequently married the mother.

The court found that the children had "deteriorated." It is clear that it derived this finding from the psychologist's testimony. The psycholoigst used the term "deteriorated" repeatedly; no other witness did. As we have noted, the court could properly rely on the psychologist's testimony.

The court found that father had improved, after finding him totally uninvolved at the time of the prior order. In *Perdue v. Perdue*, 76 N.C. App. 600, 334 S.E. 2d 86 (1985), we held that evidence that a parent had made substantial progress in rehabilitating herself from problems with alcohol could support a finding of changed circumstances. *See also Spence v. Durham*, 283 N.C. 671, 198 S.E. 2d 537 (1973) (recovery from emotional instability), *cert. denied sub nom., Spence v. Spence*, 415 U.S. 918, 39 L.Ed. 2d 473, 94 S.Ct. 1417 (1974). This finding of the father's improvement rests on substantial evidence to which no objection was made, and represents a changed circumstance justifying some modification at least with respect to the father.

Finally, the court found that mother failed to understand the needs of the children. While this finding is vague and does not rest on any specific testimony, it would appear to be generally inferred from the foregoing findings regarding mother's continuing association with Daryl and the concomitant deterioration of the children.

The previous discussion shows that the court did not rely on grandmother's testimony in its findings of changed circumstances. The findings were otherwise properly supported. That the changed circumstances found by the court existed and that they affected the welfare of the children is beyond dispute. Even disregarding the imprecisely worded finding regarding lack of understanding of the children's needs, the findings support the court's determination that there were changed circumstances justifying a modification in custody.

We note that grandmother's testimony served generally to corroborate the other competent testimony. Mother did not produce any contradictory testimony concerning what the children may have said. We therefore conclude that the court had before it ample evidence to justify findings supporting the exercise of its discretion.

The case law supports this result. Undoubtedly because of the infinite variety of possible family situations, the authorities do not point overwhelmingly to any preferred result. Grandparents have been awarded custody, though natural parents were available, in a number of cases. *See* Annot., 31 A.L.R. 3d 1187 (1970). These cases include *In re Craigo*, 266 N.C. 92, 145 S.E. 2d 376 (1965). The legislature has not mandated any statutory presumption in favor of natural parents, but has directed the award of custody "to such person, agency, organization or institution as will, in the opinion of the judge, best promote the interest and welfare of the child." G.S. 50-13.2(a). The best interest of the child, not the interest of any particular class or group, is paramount. *In re Gwaltney, supra.* On the particular facts of this case, we conclude that the court did not abuse its discretion by determining that changed circumstances justified transfer of primary custody to grandmother in the best interest of the children.

## CONCLUSION

The motion for a modification in custody due to changed circumstances was addressed to the discretion of the trial court. The trial court, with the live witnesses before it, reached a decision supported by competent evidence. No prejudicial error has been shown in the conduct of the hearing, nor has appellant shown a clear abuse of the trial court's discretion. Accordingly the order appealed from is

Affirmed.

Chief Judge HEDRICK and Judge COZORT concur.